266 So.2d 328

James F. McCONNELL

v.

STATE.

4 Div. 126.

Court of Criminal Appeals of Alabama.

April 11, 1972.

Rehearing Denied May 9, 1972.

L. A. Farmer, Jr. and J. R. Herring, Dothan, for appellant.

**525**

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charges burglary in the second degree, grand larceny, and buying, receiving, concealing or aiding in concealing stolen property. Appellant was convicted of buying, receiving, and concealing stolen property and sentenced to seven years in the penitentiary.

On November 2, 1970, Detectives Cherry and Hicks of the Dothan City Police Department investigated a report that the office of Dreambilt Homes, Inc. had been burglarized.

The owner and custodian of the building, one Phil Forrester, testified that the following items were missing: a typewriter belonging to his secretary; two electric razors, one belonging to himself and one owned by one Charles Whiddon, a tenant; a pencil sharpener, also owned by Whiddon; a trash can; petty cash; and an attache case owned by Forrester.

Upon completion of the investigation, Officer Cherry returned to the police station, where, upon arrival, he noticed appellant's automobile parked in front of the station and looked in and saw an electric razor on the back seat. Cherry then proceeded to secure a search warrant for the subject automobile. After obtaining the warrant, Cherry searched the automobile and found in the trunk the stolen articles. Based on these circumstances, Cherry arrested appellant on a charge of burglary.

On January 26, 1971, appellant filed a motion to suppress, the same being heard on February 2, 1971. The only testimony appellant offered at the hearing was that of Officer Cherry.

After consideration of the evidence at the hearing on motion to suppress the evidence, the motion was denied.

On trial date, February 25, 1971, after qualification and striking of the jury, the clerk announced that one of the jurors was missing. The appellant made it known that, under these circumstances, he would not accept the missing juror. Thereupon, over the appellant's objection, the trial judge declared a mistrial, continuing the case until April 21, 1971.

At the trial, Cherry testified that he had no personal knowledge that the automobile he searched was owned by appellant. The State attempted to show that appellant was the owner of the subject automobile, but such evidence was ruled inadmissible.

Herbert Deal, a police officer for the City of Dothan and witness for the State, testified that on November 1, 1970, the probable date of the burglary, he saw ap-

pellant drive an automobile in front of the police station and park it there. He testified that the car was still there when he got off duty at ten o'clock and was there the next day when he came back on duty.

Upon conclusion of the State's evidence, the appellant made various motions, including a motion to exclude State's evidence, all overruled, after which the defense rested.

Appellant first contends that Officer Cherry's affidavit in support of the search warrant contained material statements which were false, thus rendering the search void and the fruits thereof inadmissible. The questioned affidavit is set out as follows:

"THE STATE OF ALABAMA
HOUSTON COUNTY.

"1. Before me Don P. Bennett a Judge of the Houston County Court, Houston County, Alabama,

"2. personally appeared Ed Cherry

"3. who, being duly sworn, deposes and says that the crime of burglary in the second degree has been committed by James F. Mcconell [Sic]; that Mrs. Mary Anderson of Dreambilt Homes, Ross Clark Circle, N. E., Dothan, Ala. Houston County, Alabama, reported that on November 1, 1970 there were one Norelco Electric Shaver, one Sunbeam Electric Shaver, one Smith Corrona Portable Typewriter in its carrying case, one ball point pen desk set and one letter opener and $31.78 in currency was taken from the offices of Dreambilt Homes. At approximately 9:00 P.M., Nov. 1, 1970, James F. McConnell was apprehended in Dale County, Ala., on a 1967 Coupe Deville Cadillac gray and with a black vinyl top, license number Missouri KW8–495. I have James F. McConnell in the City jail. Dothan, Alabama and I have the said automobile at the city jail. I have observed the Norelco Shaver and the Sunbeam Shaver on the back seat of the car, the car from outside the car. James F. McConnell was known to have been in Dothan, Alabama area on November 1, 1970 and is charged with a burglary of a place of business one mile from Dreambilt Homes that burglary occurred either on October 31 or November 1, 1970.

"I made these observations on Nov. 2, 1970.

"S/Ed Cherry
 Ed Cherry

"Sworn to and subscribed before on this the 2nd day of November, 1970.

"S/Don P. Bennett
 Judge, Houston County Court,
 Houston County, Ala."

Emphasis is placed by appellant upon the discrepancy between the statements in Cherry's affidavit and the statements he made at the hearing on motion to suppress and at trial. In his affidavit, Cherry stated that he had "observed *the Norelco shaver* and *the Sunbeam shaver* on the back seat of the car." At the hearing, Cherry testified as follows:

"A When we got the call that the place had been broke into, we went out there and the stuff they reported missing to us was two shavers, electric shavers, a typewriter, a garbage can and some more stuff.

"Q Okay.

"A So we came back then to the station and we figured he might have been the one that done it, so we went and looked in the car. His car was locked. So we walked around the car and in the back, you could see a electric shaver in the back of the car.

"Q Okay. Now, did you see one electric shaver?

"A One electric shaver.

"Q All right. What kind of electric shaver was it?

"A Well, from the outside it looked like a Sunbeam.

"Q A Sunbeam? Did you see anything else in the car?

"A That's all we saw that—we figured come out of that place out there.

. . . . . .

"Q Okay. Now, you say you saw one razor?

"A Yes, sir.

"Q Was it in the front seat or back seat?

"A In the back seat.

"Q Could you describe the razor that you saw to us?

"A Well, it was just an electric razor, and the best we could tell it was a Sunbeam, and there was one missing out of that house over there, and so that's the grounds that we got the search warrant on.

"Q Did you get a description of the razor from Dreambilt Homes? Or from any employee?

"A Just a Sunbeam razor, and—there was two of them, but I don't recollect what the other one was."

It was later proven that the razor which Cherry had observed on the seat of appellant's car was not part of the stolen property.

Cherry further stated in his affidavit that "James F. McConnell was known to have been in Dothan, Alabama area on November 1, 1970. . . ." At the hearing the following took place:

"Q . . . Now, and you also knew, your investigation also showed, that he had been in Dothan on November the 1st and you were investigating that other burglary that he was connected with?

"A We had information that he was in Ashford that night about dark.

"Q So he was in this County?

"A Yes, sir.

. . . . . .

"Q Okay. And you say that in the course of your investigation you found that he was in Ashford?

"A Ashford, Alabama, yes, sir.

"Q Okay. Do you know between 4:00 o'clock on Sunday afternoon and 9:00 o'clock Sunday night whether or not he was in Dothan?

"A It was about dark when he was in Ashford. Now, I don't know what time he came back through Dothan.

"Q Do you know that he came back through Dothan?

"A No, sir, I don't know that.

"Q So you don't know if he was in Dothan during this time or not, do you?

"A No, sir, I don't."

It thus appears that the most material fact in the affidavit, i. e., the assertion by affiant that he had personal knowledge that the two stolen razors were on the back seat of appellant's car, was erroneous. The only other material statements in the affidavit—the fact that a burglary had been reported and that appellant was known to have been in the Dothan area on November 1, 1970—standing alone, would not constitute probable cause which would support the issuance of a search warrant.

Appellant admits in his brief that Officer Cherry's affidavit, on its face, is sufficient to support the issuance of the search warrant. Therefore, the only issue to be considered is whether the search warrant is valid when material statements in the supporting affidavit are subsequently contradicted and proven erroneous, in this case by the affiant himself.

The State, in support of the affidavit, argues that the false statements contained therein were cured by Cherry's testimony at trial, and cites Oliver v. State, 46 Ala.

App. 118, 238 So.2d 916, as authority. That case stands for the proposition that oral testimony, under proper circumstances, is admissible to cure an otherwise defective affidavit. In *Oliver*, quoting from Myrick v. State, 45 Ala.App. 162, 227 So.2d 448, we find:

> " 'In Knox v. State, 42 Ala.App. 578, 172 So.2d 787(10), we indicated that it was possible to supply the deficiencies in an affidavit if, in fact, additional oral evidence was laid before the issuing magistrate. In Brandies v. State, 44 Ala.App. 648, 219 So.2d 404, and *Tyler* we indicated that such oral evidence must, nevertheless, to the extent required by § 103 of T. 15, supra, be reduced to writing. . . .' "

In the present case there is no testimony that any additional information was before the issuing magistrate; therefore, the holding in *Oliver* does not support the State's contention.

In Walker v. Graham, 228 Ala. 574, 154 So. 806, where the plaintiff brought an action of trespass against the defendant arising out of a wrongful search, the Supreme Court stated:

> "If, as averred in the replication, the defendant Graham knew the facts upon which the warrant was issued, authorizing the search of plaintiffs' business, were untrue, but he nevertheless represented them to be true to the judge to secure the issuance of the warrant, this conduct upon the part of said Graham was unlawful, and it is a sound principle of law that *no right can be derived from an unlawful act, in favor of one who does the unlawful act.* . . ."

The court went on to state that:

> ". . . [N]o one will be permitted to wrongfully procure the issuance of a process by practicing a fraud or imposition upon the court or authority, and seek shelter behind such a process, though it be ever so regular upon its face. . ."

Brown v. State, 42 Ala.App. 429, 167 So.2d 281, is another case where the affidavit appeared regular on its face but was proved at trial to contain false statements. There, it appeared from the affidavit that the affiant had personal knowledge of the contents therein, but it was proven at trial that affiant had received his information from anonymous telephone calls. In holding that the evidence obtained from the search should have been suppressed, the court stated:

> "In the instant case, the deputy sheriff, on the record before us, submitted a deposition in the form of an affidavit which stated that Mrs. Brown was in possession of a prohibited liquor, indicating his direct knowledge thereof. In such case, this proof being direct and positive was sufficient to support the warrant without cross-examination. However, it did not contain the actual basis upon which the officer sought to procure the warrant."

See also United States v. Pearce, 275 F.2d 318 (7th Cir. 1960).

Under these authorities it follows that the evidence obtained in the search of appellant's car should have been suppressed on appellant's pretrial motion, or excluded upon appellant's motion at the trial in the court below.

 The appellant further insists that the State failed to prove the element of possession by the appellant of the stolen goods. As stated in Booker v. State, 151 Ala. 97, 44 So. 56:

> "It is undoubtedly true that, in order to sustain a conviction for receiving stolen property, the defendant must be shown to have had a control over the property. . . ."

Possession is defined as:

> ". . . [N]ot limited to actual manual control upon or about the person. If under one's power and dominion the thing is possessed. . . ." Lawson v. State, 38 Ala.App. 322, 82 So.2d 812.

As previously mentioned, there was testimony by Herbert Deal, a Dothan police officer, that he saw appellant drive an automobile in front of the police station and park it there on November 1, 1970. There was conflicting evidence relating to the description of the subject automobile given by Officer Deal, Officer Cherry, and Deputy Sheriff Charlie Boyett, who, along with Officer Hicks, assisted Cherry in the search.

Deal testified on direct examination that he observed appellant driving on November 1, 1970, a 1967 Cadillac, Coupe DeVille, *brown bottom* with a black *vinyl top*. On cross-examination he testified it was a *hardtop*.

Boyett testified that the car he searched was a 1967 Cadillac, Coupe DeVille, *grey bottom* with a black *vinyl top*.

At one point in the trial, Officer Cherry was asked, "You saw that article in the back of the *1968* Cadillac, two-door, *convertible* automobile?" He responded, "Yes sir." In later testifying, Cherry described the car as "a *hardtop*, sports model."

We are of the opinion that the evidence introduced by the State was sufficient to present a jury question as to whether or not the appellant was technically "in possession" of the stolen goods. See Fulton v. State, 8 Ala.App. 257, 62 So. 959.

The contention is made by appellant that there was a fatal variance between the pleading and the proof, as the indictment alleged that all the stolen property was owned by one Phil Forrester, while proof at trial showed that Forrester owned only two of the stolen articles.

The case of Davis v. State, 33 Ala.App. 68, 29 So.2d 877, is in point:

". . . Without dispute in the evidence, the store in question was being operated under the personal supervision of Mr. Berryman, the owner. The fact that a few articles among those taken from the building belonged to a lady clerk would not constitute a variance in the proof of the charges in the indictment."

Here, as Mr. Forrester was shown to be the custodian of the entire building, there was no fatal variance between the pleading and proof; therefore, appellant's motion to exclude the State's evidence was properly denied.

The following portion of the oral charge to the jury is cited as error:

"It is the settled law in this state that recent possession of stolen goods imposes on the possessor the onus of explaining his possession. And if he fails to make a reasonable explanation, it raises a presumption of guilt."

Such part of the charge is an incorrect statement of the law. It is well settled that the recent possession of stolen property does not raise a presumption of guilt. Underwood v. State, 72 Ala. 220; Orr v. State, 107 Ala. 35, 18 So. 142; Odom v. State, 44 Ala.App. 534, 215 So.2d 596; Haynes v. State, 45 Ala.App. 31, 222 So.2d 183; Graham v. State, 44 Ala.App. 554, 216 So.2d 298; Coats v. State, 257 Ala. 406, 60 So.2d 261; Buckles v. State, —— Ala.Cr.App. ——, —— So.2d —— 1972.

However, no exception having been reserved to this part of the charge, it is not subject to review by this court. Meadows v. State, 182 Ala. 51, 62 So. 737; Brown v. State, 27 Ala.App. 32, 165 So. 405; Thomas v. State, 35 Ala.App. 621, 51 So.2d 388.

On trial date, after qualification and striking of the jury, the following transpired:

"THE CLERK: The juror Mary Alice Crews is not here, Judge.

"THE COURT: Well, can you find out where she is? Approach the bench.

"(Thereupon the attorneys approached (the bench and an off-record dis-(cussion held.

"THE COURT: We will take a recess for a few minutes.

"(Recess)

"THE COURT: Mr. Herring, do you have any motion that you wish to make at this time?

"MR. HERRING: No, sir, Judge, I just make known to the Court that the defendant is not willing to accept the missing juror under the present circumstances.

"THE COURT: Under those circumstances, the Court declares a mistrial in this case and the jury is discharged.

"MR. HERRING: Judge, we would like for the record to show that we interpose an objection to the directing a mistrial on the grounds that this man is presently incarcerated in the Houston County jail without bond and it is denying him a speedy trial.

"THE COURT: You have your objection and it is noted in the record. Gentlemen, you are discharged insofar as this case is concerned."

The trial judge acted within his province in declaring a mistrial since a juror was missing, and the appellant stated that the missing juror would not be acceptable to him.

As stated in Hallman v. State, 36 Ala. App. 592, 61 So.2d 857:

"Generally speaking a mistrial is no trial. If something transpires or occurs during the progress of a trial, and it is made clearly manifest that justice cannot be afforded, the proceedings should be arrested and a mistrial ordered."

See also Sample v. State, 138 Ala. 259, 36 So. 367; Tiner v. State, 279 Ala. 126, 182 So.2d 859.

For the error shown the judgment is due to be and the same is hereby reversed, and the cause is remanded.

Reversed and remanded.

PRICE, P. J., and ALMON and CATES, JJ., concur.