Violation of Alabama Child Abuse Act; sentence: seven years imprisonment.
The State's evidence was sufficient to support a finding that during the mid-morning hours of November 27, 1978, the appellant, under the pretense of bathing two-year-old Kristy Lynn Reaves, abused her by placing her in scalding water. The *Page 642 
child suffered second degree and possibly third degree burns on her feet, legs, and buttocks. She was treated at a local hospital in Anniston for about forty-eight hours and then transferred to the Shrine Burn Hospital in Cincinnati, Ohio, for further treatment.
The child's mother, Patricia Green, testified that she and her children were living with the appellant at his father's mobile home. She stated that on the morning of the incident she was awakened by the appellant and asked him the whereabouts of her daughter. The appellant told her that he was bathing the child and would finish without her assistance. Mrs. Green heard the child scream and attempted to enter the bathroom where the child and the appellant were, but was restrained by the appellant who stated that he would take care of the situation. The appellant stated that he needed no help and sent Mrs. Green to the living room. Shortly thereafter the appellant entered the living room with the child. Mrs. Green inquired as to why the child had no shoes on. The appellant replied that the mother did not want to see, but she insisted. The child exclaimed, "Mommie, feet hurt." Mrs. Green took the child, removed her socks, and discovered her feet had been burned. Within thirty to forty-five minutes of this discovery, the child was taken to a local hospital for treatment. Mrs. Green testified that while en route to the hospital the appellant threatened to harm both her and her other child if she connected him with the incident.
While at the hospital, Mrs. Green told Calhoun Deputy Sheriff M.L. Kirby that she had been bathing the child, and the child had accidentally turned on the hot water. Mrs. Green stated that she initially gave that version of the incident because she feared harm to herself and to her son who was still at the appellant's residence.
Calhoun Deputy Sheriff Larry Amerson testified that upon arriving at the hospital with his partner, Deputy Sheriff Kirby, around 12:50 p.m. they talked to Mrs. Green. Deputy Amerson stated that he took some photographs of the child and then, with Deputy Kirby, talked to the appellant.
On voir dire examination, Deputy Amerson stated that at the hospital Deputy Kirby read the appellant his Miranda rights and asked him to go downtown and make a statement. Amerson said this was done because the appellant had been present at the scene of the incident. At their office the appellant was again advised of his rights. The appellant signed a waiver of rights form and then made a statement which, while not incriminating, placed him with the child in the bathroom. After the proper voluntariness predicate was laid, the statement was admitted into evidence.
Appellant's sister, Kathy Harrison, testified that around 11:00 a.m. on November 27 she was awakened by the crying of the child. She stated that she heard water running and the appellant telling the child to be quiet. Miss Harrison stated that after the appellant left the bathroom she entered and found the child standing in the bathtub shaking. She stated that the child got out of the tub and sat on the floor. Miss Harrison saw that the child's feet had been burned as they were red and peeling. She then called to the appellant that the child was out of the bathtub and returned to her bedroom.
Dr. Louis Sellers testified that on November 27 he treated the child for burns. He stated that on that evening Mrs. Green changed her original account of the incident and he (pursuant to Code § 26-14-3) directed the nurses to contact the law enforcement authorities.
The State rested its case, and the appellant's motion to exclude the State's evidence was properly overruled.
The appellant testified in his own behalf and disputed Mrs. Green's account of the incident. He testified that Mrs. Green, not he, was giving the child a bath. He stated that he was in the living room with Mrs. Green when his sister called from the bathroom. The appellant stated that he took the blame for the incident because Mrs. Green did not want her children to be taken from her. He testified that his statement *Page 643 
taken by Deputy Kirby was based upon his assuming the responsibility for Mrs. Green and was false.
The only issue raised on appeal concerns itself with the omission in the indictment of the specific act or means by which the child was abused. Appellant contends that such an allegation is substantive in nature and that its omission requires reversal of this cause.
Omitting the formal parts, the indictment reads:
 "Willie Claude Harrison, also known as William Claude Harrison, whose true name is to the Grand jury otherwise unknown, a person who had the temporary care, custody or responsibility for the supervision of Kristy Lynn Reaves, a child under the age of eighteen (18) years, willfully abused and willfully maltreated said child while said child was in his temporary care, custody or under his control. . . ."
Section 26-15-3, Code of Ala. 1975 (Supp. 1979), states:
 "A responsible person, as defined in section 26-15-2, who shall torture, willfully abuse, cruelly beat or otherwise willfully maltreat any child under the age of 18 years shall, on conviction, be punished by imprisonment in the penitentiary for not less than one year nor more than 10 years."
If there is no indictment form for an offense set out in Code § 15-8-150, then an indictment which closely parallels the language of the statute creating the offense is generally valid. Worrell v. State, Ala.Cr.App., 357 So.2d 373, cert. denied, Ala., 357 So.2d 378 (1978); Manson v. State, Ala.Cr.App., 349 So.2d 67, cert. denied, Ala., 349 So.2d 86
(1977); Code § 15-8-23.
Pursuant to Code § 15-8-25, an indictment must state the facts constituting the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is intended. An indictment must likewise apprise the accused not only of the nature of the offense, but also of the particular act or means by which it was committed. Chambersv. State, Ala.Cr.App., 364 So.2d 416, cert. denied, Ala.,364 So.2d 420 (1978). See also: Andrews v. State, Ala.Cr.App.,344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977). However, an averment of the means, although one of substance and not of form, is not a constituent or essential element of the offense. The omission of such would render an indictment merely voidable rather than void. Consequently, such a deficiency must betimely and specifically raised by demurrer. Gaines v. State,146 Ala. 16, 41 So. 865 (1906); Whitt v. State, Ala.Cr.App.,370 So.2d 730, reversed on other grounds, Ala., 370 So.2d 736
(1978); Jeter v. State, Ala.Cr.App., 339 So.2d 91, cert. denied, Ala., 339 So.2d 95 (1976).
In the instant case, the record reveals that the appellant was arraigned on April 30, 1979, and entered a plea of not guilty. It was not until June 22, 1979, that the appellant filed a demurrer to the indictment which, on June 23, was "overruled and dismissed as being filed too late (after Plea to indictment)." In Stringer v. State, Ala.Cr.App., 372 So.2d 378,380, cert. denied, Ala., 372 So.2d 384 (1979), we stated:
 "Ordinarily one waives any irregularities in the indictment by appearing and pleading in the trial court, and a plea to the merits is considered as an admission of a valid indictment. Johnson v. State, 49 Ala. App. 389, 272 So.2d 597 (1973); Elliott v. State, 39 Ala. App. 314, 98 So.2d 618 (1957). . . ."
We therefore find no error on the part of the trial court in overruling the appellant's untimely demurrer.
AFFIRMED.
All the Judges concur. *Page 864